## ROBERT LETTICH'S CASE.

Suffolk.  May 3, 1988. — November 14, 1988.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Workmen's Compensation Act*, Appeal, Procedure, Findings by Industrial
Accident Reviewing Board, Judicial review.

The reviewing board of the Department of Industrial Accidents did not ex-
ceed its authority under G. L. c. 152, § 11C, as appearing in St. 1985,
c. 572, § 25, in reversing a decision of a single member of the Industrial
Accident Board and vacating an award of compensation, where the board
properly exercised its fact-finding responsibilities and where its decision,
supported by substantial evidence, was neither "based upon an error of
law" nor "made upon unlawful procedure." [394-396]

APPEAL from a decision of the Industrial Accident Reviewing
Board.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Stephen J. Kehoe* for the employee.

*James A. Garretson* for the insurer.

O'CONNOR, J. This is an appeal under G. L. c. 152, § 12
(2), as appearing in St. 1985, c. 572, § 26, by an employee
from a decision of the reviewing board of the Department of
Industrial Accidents denying him worker's compensation. The
employee had filed a claim for benefits on February 8, 1983.
The substance of his claim was that work-related stress had
exacerbated his preexisting heart or coronary artery disease.
Initially, a single member of the Industrial Accident Board
denied the employee benefits following a conference pursuant
to former G. L. c. 152, § 7, as appearing in St. 1980, c. 283.
A different single member then heard evidence pursuant to
former G. L. c. 152, § 8, as appearing in St. 1972, c. 742,
§ 2, and, on June 10, 1985, rendered a decision favorable to
the employee. On May 19, 1987, the reviewing board heard

the parties' oral arguments based on the record before the single member including the single member's report favoring the employee. The reviewing board reversed the single member's decision and vacated the award.

The employee appealed to the Appeals Court pursuant to G. L. c. 152, § 12 (2). Consistent with the Appeals Court's interim rule respecting the processing of workers' compensation appeals, the employee's appeal was entered on the single justice docket of that court for determination by a single justice. The single justice, however, reported the case to a full panel of that court for reasons we set forth below. We then transferred the case to this court on our own initiative.

The single member's decision favorable to the employee was largely based on the opinion of Alan Balsam, M.D., as set forth in a typewritten report to the employee's attorney. Dr. Balsam concluded that there was a causal connection between the employee's work-related stress and his coronary artery disease. The report was in evidence before the single member as part of the physician's deposition. Dr. Balsam had not treated the employee. The testimony of other physicians, including that of the employee's attending cardiologist, Maximilliaan G. Kaulbach, M.D., was also submitted to the single member in deposition form. The reviewing board, relying heavily on Dr. Kaulbach's deposition, concluded, contrary to the decision of the single member, that "[t]he overwhelming weight of the medical evidence in this case points to a natural progression of an underlying disease process which is unrelated to the work effort."

In his report to the panel, the Appeals Court single justice noted that before the workers' compensation law was substantially revised by St. 1985, c. 572, the reviewing board had plenary fact-finding authority. The reviewing board's finding "entirely superseded that of the single member which thereafter became of no importance." *Ricci's Case*, 294 Mass. 67, 68 (1936). The question on judicial review was whether the evidence warranted the finding of the reviewing board. *DiGiovanni's Case*, 255 Mass. 241, 242 (1926).

The single justice observed that "[t]his case seems to be governed, however, by G. L. c. 152, § 11C, as appearing in St. 1985, c. 572, § 25, which, by § 70 of the same act, took effect on November 1, 1986. (The single member's decision was filed earlier, on June 10, 1985, but the reviewing board's decision was not filed until September 24, 1987.) Under § 11C, '[t]he reviewing board shall reverse the decision of a [single] member only if it determines on the basis of such member's written opinion and on an examination of a written transcript of the hearing, that the member's decision is beyond the scope of his authority, arbitrary or capricious, contrary to law, or unwarranted by the facts. The reviewing board may weigh evidence, but may not review determinations by the member who conducted the hearing regarding the credibility of witnesses who have given testimony.' It may be relevant, under this standard of review, that the testimony of all four doctors was received in deposition form rather than in live testimony before the single member."

The single justice's report concludes by identifying the issue this way: "Whether the reviewing board, under this new standard of review, may reject the single member's adoption of one expert's opinion and adopt instead the contrary opinion of another expert is a question of fundamental importance in determining the role of the reviewing board under the new statute. It is pivotal to this case and may well be pivotal in any case where (as is often true in workmen's compensation cases) expert witnesses for the employee and for the employer have offered conflicting opinions as to disability or causation."

We recite some of the single member's findings for background purposes. The single member found as follows: The employee was employed by a patent law firm, from 1965 until March, 1982. At first he was an accountant-manager, and in the middle 1970's his job title changed to "legal administrator." As such, he was in charge of bookkeeping, supplies, and other administrative matters, including personnel, pensions, and insurance.

The employee first experienced chest pains in June, 1970, while on vacation. In July, he was diagnosed as having suffered

a myocardial infarction. He developed angina pectoris as a result of the myocardial infarction and was out of work for three months. In January, 1974, he was admitted to Salem Hospital after suffering an anginal attack on a train. That June, he was diagnosed as suffering from coronary artery disease and medical treatment was instituted. During the ensuing years, he had occasional bouts of angina approximately once a month. These bouts became more frequent and there was a progressive clinical deterioration of the cardiac condition. The employee had smoked about one and a one-half packs of cigarettes a day for twenty years until 1963, and the employee has a family history of cardiovascular disease.

In 1980, the employee began to experience several incidents of stress at work. Among other things, he was the only nonlegal employee not given a raise, and he was forbidden to chair partnership meetings as he had done in the past. He then filed an age discrimination suit, after which incidents of petty abuse and harassment increased. His angina began bothering him more in frequency and degree.

On March 18, 1982, while coming to work on the train, the employee suffered a severe angina attack. He left work at 3 P.M., and has not returned since. His current activities are extremely limited, and he experiences angina on a regular basis when he exerts himself, in response to emotional excitement, and on certain other occasions.

In addition, as we stated earlier in this opinion, the single member, relying substantially on Dr. Balsam's opinion, found that the stress associated with the employee's work had contributed to the employee's disabling coronary artery disease.

The reviewing board's decision contains a detailed discussion of the employee's medical history from 1972 to 1983 as disclosed by Dr. Kaulbach's records. None of the history contained in the reviewing board's decision was inconsistent with the single member's findings based on the credibility of witnesses before him. In support of its reversal of the single member's determination, the reviewing board stated as follows: "The overwhelming weight of the evidence leads inescapably to the conclusion that the employee has failed to introduce sufficient

expert testimony which, if adopted, would support a finding of nexus between work stress and disability. The single member adopted the opinion of Dr. Balsam. In formulating his opinion on causal relationship, Dr. Balsam gave weight to and relied upon his own opinion that the employee's 1970 myocardial infarction was work-related. It follows that Dr. Balsam's opinion must be rejected because it is based on facts not in evidence (nor even claimed).

"The weight of the evidence in the case simply fails to support the proposition that the employee sustained an injury to his heart. In order to prove an injury to his heart, the employee must establish an aggravation or acceleration of his underlying arteriosclerotic heart disease. In plain terms he must prove that his heart condition worsened. A review of the testimony of the attending cardiologist evidences no worsening of the employee's condition in the several years prior to his stopping work on March 18, 1982. The overwhelming weight of the medical evidence in this case points to a natural progression of an underlying disease process which is unrelated to the work effort."

Close to the end of his decision, the single member reported as a "general finding" that "the employee [had] sustained an industrial injury on March 18, 1982." The employee had sustained an angina attack on a train on his way to work that day. The insurer argues that the general finding was erroneous as a matter of law because "[i]t is now elementary that the compensation act does not extend to cover employees going to and coming from their work." *Gwaltney's Case*, 355 Mass. 333, 335 (1969), and cases cited. The reviewing board, argues the insurer, properly reversed the single member's decision on that ground alone. We are not persuaded by the insurer's argument. The board thought it possible, and we believe it to be clear, that the single member "simply meant that the incident on the train while commuting to work was significant in that it was the last physical consequence flowing from a series of emotional and stressful situations at work." The reviewing board reversed the single member's decision solely on the ground that, despite the single member's contrary finding, the em-

ployee had not established to the board's satisfaction that his heart or coronary artery disease was caused or made worse by his employment.[1]

We held in *Pospisil's Case*, 402 Mass. 820, 822 (1988), that G. L. c. 152, § 11C, is to be applied retroactively to cases "where, as here, the reviewing board held its hearing and issued its decision after the effective date of § 11C, even though the injury and the proceedings before the single member occurred prior to that date." Therefore, we must resolve the question whether the reviewing board exceeded its authority under § 11C by finding differently from the single member on the causation question.

With respect to clarity, § 11C does not represent one of the Legislature's best performances. Nevertheless, it does seem clear that the Legislature intended that the reviewing board is to function as a fact finder. No other construction would be consistent with § 11C's provision that the reviewing board, armed with a transcript of the hearing before the single member, "may weigh evidence." The reviewing board "may not review determinations by the member who conducted the hearing regarding the credibility of witnesses who have given testimony," but there is no other expressed limitation on the reviewing board's fact-finding authority, and the expression of a single limitation implies that there are no others.

We construe § 11C as providing that a single member's findings, not erroneous as a matter of law, directly based on "live" testimony before him given by witnesses testifying to their personal observations, are final. The reviewing board

---

[1] The reviewing board's statement, repeated above, that "[i]n formulating his opinion on causal relationship, Doctor Balsam gave weight to and relied upon his own opinion that the employee's 1970 myocardial infarction was work related," appears to be erroneous. Cross-examined about that matter during his deposition, Dr. Balsam stated that "irrespective of [the] issue of myocardial infarction, . . . there was a causal relationship between that stress and his coronary artery disease." It seems clear that the board's error in this regard is not the principal reason for the board's rejection of Dr. Balsam's opinion, however. Rather, the board viewed the evidence as inescapably leading to the conclusion that the employee's condition was not work-related. The board characterized the weight of the evidence in that regard as "overwhelming."

must accept those findings, but, on the basis of the transcripts of the hearing before the single member (the board does not conduct an evidentiary hearing), the board may accept or reject a single member's findings based on inference. Also, the board may accept or reject a single member's findings based on deposition testimony, reports, documents, and the like, and may accept or reject a single member's findings based on the opinions of expert witnesses irrespective of whether the expert witnesses' testimony is "live" or by way of deposition. (Of course, the board would be bound by a single member's finding that an expert witness before him had misrepresented what his opinion was. In such a case, the board could not give weight to the testimony.) Furthermore, based on the transcripts, the reviewing board may make findings in addition to those made by the single member as long as the additional findings are not inconsistent with the single member's findings based on credibility as defined above.

With the facts thus established, the reviewing board's function is to decide whether the single member's determination as to the employee's entitlement to benefits is "beyond the scope of his authority, arbitrary or capricious, contrary to law, or unwarranted by the facts." G. L. c. 152, § 11C. An aggrieved party may appeal the reviewing board's decision to the Appeals Court "pursuant to section 14 of chapter 30A." G. L. c. 152, § 12 (2). Under G. L. c. 30A, § 14 (7), the Appeals Court may affirm, modify, or set aside the reviewing board's decision, or remand the matter to the board, if the board's decision, among other things, is "based upon an error of law" or "made upon unlawful procedure," or "unsupported by substantial evidence."

In the present case, the employee does not argue that the reviewing board's decision was unwarranted by substantial evidence. Rather, the employee contends that the reviewing board "acted beyond its appellate authority in overturning the decision of the Single Member." The reviewing board did not reject any finding of the single member based on "the credibility of witnesses who [gave] testimony." See G. L. c. 152, § 11C. The reviewing board properly exercised its fact-finding respon-

sibilities. The board's decision is not based upon an error of law nor was it made upon unlawful procedure. We affirm the decision of the reviewing board.

*So ordered.*