NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-745

DAVID C. TURLEY

vs.

COMMONWEALTH EMPLOYMENT RELATIONS BOARD & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

David C. Turley, a terminal operator employed by the Massachusetts Port Authority (Massport), filed a charge with the Department of Labor Relations (department) alleging that the International Longshoremen's Association, Local 809 (union), breached its duty of fair representation to him by, among other things, not pursuing a grievance he filed in May 2018 concerning the seniority provisions of the collective bargaining agreement (CBA). A department hearing officer concluded that the union acted with unlawful motivation in withdrawing the grievance, but, on the union's administrative appeal, the Commonwealth Employment Relations Board (board) reversed, concluding that

_____

[1] International Longshoremen's Association, Local 809.

Turley failed to meet his burden of proving unlawful motivation. Turley now appeals from the board's decision, arguing principally that the board erred by not deferring to the hearing officer's conclusions. We disagree and thus affirm.

Background. 1. Facts. We set out the essential facts, as found by the hearing officer and adopted by the board. These facts are uncontested on appeal.

The union is the exclusive bargaining representative for Massport employees in several work classifications, including terminal operator forepersons, terminal operators, pier clerk forepersons, and pier clerks. Every three months Massport provides the union with a bid sheet listing employees by seniority for purposes of bidding on shift hours, primary work location, and days off. Terminal operator forepersons and terminal operators bid on one sheet, and pier clerk forepersons and pier clerks bid on a separate sheet. Turley began working as a terminal operator in May 2008 and has remained in that position at all times relevant to this dispute. Philip McGee, who became union president in 2015, began working as a terminal operator in June 2007 but moved to the position of pier clerk about four months later.

In the summer of 2017, a terminal operator announced his retirement, and Turley learned that McGee was interested in the

2

position.  Around the same time, McGee contacted union counsel Michael Feinberg for advice on whether seniority for shift bidding was determined by date of hire or by the length of time worked within a classification.  Feinberg replied by letter that he construed the CBA to provide in these circumstances for seniority by date of hire.  McGee gave copies of Feinberg's letter to Turley and others, who then met with McGee in the break room to discuss their concerns.  Turley stated that he disagreed with Feinberg's opinion and that he would file a grievance if McGee tried to bid ahead of him.  McGee acknowledged Turley's right to file a grievance.  In December 2017 McGee moved into the terminal operator group.

In February 2018 Massport circulated a quarterly bid sheet for terminal operators that listed McGee ahead of Turley. Turley immediately filed two grievances with union steward Lou Steriti, alleging violations of the seniority provisions of the CBA.[2]  Steriti presented the grievances to his manager Chris Zuffante, who in turn forwarded them to Brian Day, then Massport's deputy director of labor relations.  Soon thereafter, Day contacted McGee by telephone and told him that Massport "had this issue before with another group" and that "seniority as to

---

[2] As discussed further below, we need not resolve the parties' conflicting interpretations of the seniority provisions to resolve this appeal.

3

who bids first . . . really isn't of major concern to [Massport]." Day further stated that, were the union to pursue the grievances, he would interpret that as the union "agree[ing] with Mr. Turley's position" and would therefore allow the grievances as he would for "all other grievances filed by other [t]erminal [o]perators on the matter of seniority and bidding order." In other words, "if the [u]nion were to pursue it, [Day] would agree to [Turley's] grievance[s] and then every other grievance that came down the pipeline to infinity." Day thus advised McGee that the union "ha[d] 'to kind of step in and figure [it] out.'"

McGee met with Turley, Steriti, and three other terminal operators in the break room and relayed to them what Day had said. McGee also sent Turley's grievances to Feinberg for a legal opinion and invited Steriti to meet with Feinberg and other union officers to discuss the matter. Steriti concluded after that meeting that none of those who were present -- McGee, Feinberg, union vice president Dennis LaColla, union treasurer Kathy Mulcahy, and vice president of the international union Bernie O'Donnell -- supported Turley's position.

On or about February 12, 2018, McGee asked Steriti, LaColla, and Mulcahy to attend an executive board meeting to vote on whether to pursue Turley's grievances. Steriti refused

4

to attend, and McGee, LaColla, and Mulcahy then voted unanimously to withdraw the grievances.  After McGee informed Turley of the vote, Turley sent a letter to McGee, Zuffante, and O'Donnell, stating that he was not being fairly represented because McGee used his position as union president to bid ahead of half the terminal operators, including Turley, and to call a meeting to have Turley's grievance dismissed.  At some point in February 2018, Turley hired counsel.

On March 29, 2018, the union held a general membership meeting at which a topic of discussion was whether to amend the union bylaws to include language that "there was only one seniority list regardless of job classification" and "seniority was determined by date of hire."  After the discussion LaColla made a motion to reaffirm the union's practice of recognizing seniority by date of hire, which passed by a vote of eleven to three, and a second motion to add the seniority language to the bylaws, which passed by a vote of either eleven to three or twelve to four.  Ultimately, however, the union did not adopt the amended bylaws because it was later determined that the vote was done incorrectly.

In May 2018 Massport circulated a quarterly bid sheet that again listed McGee ahead of Turley, prompting Turley to file another grievance with Steriti.  McGee then convened a second

5

executive board meeting to vote on whether to pursue this grievance. After Steriti refused to attend and McGee abstained from voting, the remaining members, LaColla and Mulcahy, voted to withdraw the grievance. Later, however, the executive board decided not to implement the vote so that the matter could be decided "in the most fair and democratic way possible," i.e., through "an emergency meeting so that [the executive board] could put the issue of Dave Turley's grievance to the entire [u]nion body."

On or about May 25, 2018, McGee called an emergency membership meeting to discuss Turley's May 2018 grievance, the only topic of discussion at the meeting. Turley participated in the discussion. At the end of the meeting, the membership voted thirteen to three against pursuing the grievance.

2. Hearing officer's decision. Although Turley presented four charges to the hearing officer, only one is at issue on appeal: that the union breached its duty of fair representation to Turley by withdrawing his May 2018 grievance.[3] The hearing

---

[3] The other charges were that the union breached its duty of fair representation when McGee (1) used his position as union president to bid ahead of Turley in February 2018; (2) withdrew Turley's February 2018 grievances; and (3) proposed a seniority amendment to the union's bylaws. The hearing officer ruled against Turley on the first charge, finding that McGee bid ahead of Turley based on his "good faith" belief that he was entitled to do so under the CBA. Turley does not challenge this finding on appeal. Nor does he challenge the board's conclusion that

6

officer found that the union's handling of the May 2018 grievance was not "arbitrary, perfunctory, or demonstrative of inexcusable neglect because the [u]nion investigated that grievance, reviewed the CBA, consulted with Feinberg, considered Turley's position, convened the [executive board] to discuss the grievance which voted to present the grievance to the membership, and conducted an emergency membership meeting in May of 2018 to vote on whether to withdraw the grievance." The hearing officer further found that the union "engaged in informed decision-making . . . consistent with [its] duty of fair representation when it interpreted the contractual seniority provisions" (quotation omitted).

Notwithstanding these findings, the hearing officer concluded that the union's decision to withdraw the grievance after the emergency membership meeting "was unlawfully motivated based on McGee's personal interest in the outcome of that

---

the February 2018 grievances were frivolous because Turley admitted that, even under his interpretation of the CBA, McGee would have been entitled to bid ahead of him for a ninety-day period following his move into the terminal operator group. In light of this, Turley conceded at oral argument that the union's withdrawal of the February 2018 grievances does not independently support a charge of prohibited practice. Turley also conceded at oral argument that the proposal to amend the bylaws does not support an independent charge because the amendment was ultimately not adopted and, as the board found, there was no evidence that the union relied on the amendment in deciding not to pursue Turley's May 2018 grievance.

grievance." In so concluding, the hearing officer cited the "unprecedented" nature of the March 29, 2018, membership meeting to amend the bylaws; McGee's participation in that vote; his convening an executive board meeting "to vote on whether to present Turley's May 2018 grievance to the membership"; and his decision to call another "unprecedented" membership meeting on May 25, 2018, to vote on whether to pursue the grievance. While acknowledging that McGee recused himself from the vote at the executive board meeting, the hearing officer found that there was no evidence that he recused himself from the discussion prior to that vote and that he openly voted by hand at both the March 29, 2018 and May 25, 2018 membership meetings. Based on these factors, the hearing officer concluded that "McGee's actions and his continued opposition to Turley's positions on seniority and bidding tainted the memberships' [sic] assessment into the merits of Turley's May of 2018 grievance and affected their vote not to pursue that grievance."

3. _Board's decision_. The board affirmed the hearing officer's conclusion that the union's handling of the grievance was not arbitrary, perfunctory, or demonstrative of inexcusable neglect, but disagreed that Turley met his burden of proving that the union acted with unlawful motivation. The board concluded that McGee's self-interest, standing alone, was

8

"insufficient to establish an unlawful motivation in the handling of the May 2018 grievance, a grievance that was in essence a purely internal dispute among [the union's] members." The essential facts, in the board's view, were that the union presented the matter at a membership meeting, at which "Turley and his supporters, including Steriti, were present and fully participated . . . and spoke in support of Turley's grievance"; the membership voted to withdraw the grievance; and "there was no evidence presented to show that McGee exerted any undue influence, made any threats, or otherwise attempted to manipulate the outcome of the vote of the membership."

The board disagreed with the weight that the hearing officer placed on the "unprecedented" nature of the meetings, explaining that the nature of the matter was itself unprecedented and that "the [u]nion's resort to such a process in the face of a rare dispute among its members [was] not demonstrative of bad faith" but, in fact, "the opposite." The board observed that allowing Turley's grievances to move forward without a vote would have run counter to the opinion rendered by union counsel. Also, it "would have automatically disadvantaged not only McGee, but potentially others in the unit as well," as there were other "employee[s] in the bargaining unit whose date of hire differed from the date they entered into a specific

9

classification" and "there had been instances in the past where employees who had moved into the [t]erminal [o]perator group after working a different classification had bid on the basis of their date of hire seniority without objection." In sum the board concluded, based on all the record evidence, that "[w]hile the [u]nion's processes here could certainly have been improved upon, the [u]nion's decision to avail itself of its normal governance processes to resolve the dispute cannot be used to support a finding of an unlawful motivation, even if it ultimately resulted in advantaging the [u]nion [p]resident in shift bidding."

Discussion. 1. Standards of review. As mentioned, Turley's primary argument on appeal is that the board erred by not deferring to the hearing officer's decision. In particular, Turley maintains that, so long as the hearing officer's conclusions were supported by substantial evidence, i.e., "any reasonable view of the evidence," the board was required to "respect" them. This argument, which pervades Turley's brief, reflects a mistaken understanding of the board's role in the administrative review process.

Contrary to Turley's suggestion, the standards of review applicable to proceedings of this sort are well settled. An administrative appeal board must give "substantial deference" to

a "hearing officer's resolution of credibility questions (i.e., that a fact is true because a witness testified to it and that witness is believable)" and "some deference" to the hearing officer's other "subsidiary findings." Vinal v. Contributory Retirement Appeal Bd., 13 Mass. App. Ct. 85, 101 (1982). An appeal board is entitled to reject a hearing officer's findings when "they are significantly against the weight of the evidence or . . . suspect in light of 'the consistency and inherent probability of testimony.'" Id., quoting Universal Camera Corp. v. National Labor Relations Bd., 340 U.S. 474, 496 (1951). If it does so, however, the board must lay out in its decision "a considered articulation of the reasons underlying that rejection." Vinal, supra at 102. See Morris v. Board of Registration in Med., 405 Mass. 103, 110-111 (1989) (adopting Vinal standard); United Water & Sewer Workers, Local 1 v. Labor Relations Comm'n, 28 Mass. App. Ct. 359, 360 (1990) (applying Vinal standard in reviewing decision of board's predecessor agency).

On judicial review the court's role is to determine whether there is substantial evidence to support the final agency decision -- here, the board's decision. See Morris, 405 Mass. at 111; United Water & Sewer Workers, Local 1, 28 Mass. App. Ct. at 360. There is no support for Turley's contention that the

11

substantial evidence standard governs an agency's review of a decision of an administrative hearing officer. See Morris, supra at 110 ("We have never held . . . that the administrative agency responsible for making the final decision may not revise or reject the findings of a hearing officer on conflicting evidence").[4] Indeed, the purpose of Vinal's requirement that an agency articulate its reasons when rejecting a hearing officer's findings is so that a reviewing court can determine whether there is substantial evidence to support the agency's decision. See Vinal, 13 Mass. App. Ct. at 101-102. In this way the Vinal standard "preserve[s] to the [agency] the right to exercise its judgment and statutory responsibility." Morris, supra at 111.

2. Substantial evidence. We thus turn to whether there is evidence that "a reasonable mind might accept as adequate to support" the board's conclusion that the union did not act with unlawful motivation in withdrawing Turley's May 2018 grievance. G. L. c. 30A, § 1 (6). "Unions are permitted 'a wide range of reasonableness' in representing the often-conflicting interests of" their members. Graham v. Quincy Food Serv. Employees Ass'n, 407 Mass. 601, 606 (1990), quoting Baker v. Local 2977, State Council 93, Am. Fed'n of State, County & Mun. Employees, 25

_____

[4] All of the cases cited by Turley involve application of the substantial evidence standard on judicial review of a final agency decision.

12

Mass. App. Ct. 439, 441 (1988).  Consequently, unions have "considerable discretion not to pursue a grievance, as long as their actions are 'not improperly motivated, arbitrary, perfunctory or demonstrative of inexcusable neglect.'"  Graham, supra, quoting Baker, supra.  To prove improper motivation, "it is not enough for the employee to show that his grievance was 'meritorious,' or that the union made a judgmental error'" in its processing of the grievance (footnotes omitted).  Baker, supra at 441-442.  Rather, improper motivation is established only where there is "'substantial evidence' of bad faith that is 'intentional, severe, and unrelated to legitimate union objectives.'"  Graham, 407 Mass. at 609, quoting Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of Am. v. Lockridge, 403 U.S. 274, 301 (1971).

Here, substantial evidence in the record supports the board's determination that the union's conduct did not rise to the level of intentional and severe bad faith unrelated to legitimate union objectives.  The critical facts cited by the board -- that the union presented Turley's May 2018 grievance to the membership; that Turley and his supporters participated in the discussion; and that the membership voted thirteen to three not to pursue the grievance -- are undisputed.  These facts support the board's conclusion that, while the processes the

13

union employed were inelegant, it "did what it could to settle the grievance[] fairly" by "avail[ing] itself of its normal governance processes to resolve the dispute."

The board was entitled to reject the hearing officer's decision to the contrary, and it carefully explained why it did so.  Unlike Morris, 405 Mass. at 112-114, on which Turley heavily relies, the board did not overturn any of the credibility findings made by the hearing officer.  To the contrary, the board accepted all of the hearing officer's subsidiary factual findings -- even those that did not rest on her resolution of credibility questions -- but drew different conclusions from those findings, as it was permitted to do.[5]  See

_____

[5] Citing a litany of examples, Turley argues that the board made de novo findings that clearly conflict with the hearing officer's findings.  We have carefully reviewed each of Turley's assertions and conclude that none show that the board rejected the hearing officer's subsidiary factual findings, as opposed to the conclusions she drew from those findings, with one possible exception.  That is the board's finding that McGee told LaColla about his conversation with Day prior to the vote at the first executive board meeting, which conflicts with the hearing officer's observation (contained in the discussion portion of her decision) that "there is no evidence that [McGee] disclosed either his conversation with Day or Massport's position concerning Turley's grievances to the [executive board] prior to [its] vote on the grievances."  But the board's finding is supported by the evidence, in particular, McGee's affirmative response during direct examination to the question, "At any point did you have any conversations with Mr. Lacolla . . . about the information you learned from Mr. Day?"  Moreover, as the board noted, even assuming that LaColla was unaware of Day's position, that would not make it any less likely that LaColla's vote was "on the merits, rather than a bad faith attempt to

14

United Water & Sewer Workers, Local 1, 28 Mass. App. Ct. at 363-364. For example, while accepting the hearing officer's findings that the executive board meetings and the general membership meetings were "unprecedented," the board determined that to be not demonstrative of bad faith, but a reasonable response to "a rare dispute" that impacted the entire membership, especially where Massport had communicated that the dispute was an internal matter that the union had to resolve. Likewise, the board accepted the hearing officer's finding that McGee had a personal interest in the outcome of Turley's grievance (as did many others in the unit), but explained why his personal interest did not support a finding of unlawful motivation on the part of the union. As the board observed, McGee and a large majority of the membership voted consistently with union counsel's interpretation of the CBA, and there was no evidence that McGee "intimidated or coerced" union counsel into agreeing with him. The board also noted the lack of evidence that McGee or anyone else was motivated by "unlawful discrimination, antipathy, or personal dislike toward Turley" or that McGee "exerted any undue influence, made any threats, or otherwise attempted to manipulate the outcome of the vote of the

_____

ensure that McGee would successfully outbid Turley regardless of the contract language."

15

membership."  To the extent the hearing officer made a contrary finding of fact when she stated (in the discussion portion of her decision) that McGee's actions "tainted" the membership vote, we see no evidence in the record, and Turley points to none, to support such a finding.[6]

Although Turley devotes a large portion of his brief to arguing that his interpretation of the CBA is correct, again, to establish unlawful motivation, it not enough for Turley to show that his grievance was "arguably meritorious."  Graham, 407 Mass. at 609.  So long as the union's interpretation of the CBA was not "irrational or indicative of any ulterior or malign motive," it was within the union's discretion not to pursue the grievance.  Baker, 25 Mass. App. Ct. at 443.  See Graham, supra. As in Baker, supra, we need "not enter upon a detailed inquiry whether the union's implicit interpretation of the seniority provision[s] was correct."  Suffice it to say that the hearing officer concluded that the relevant contractual language is "unclear," a conclusion with which we agree.  Moreover, as the hearing officer further concluded, "McGee bid ahead of Turley

---

[6] The hearing officer's subsidiary factual findings also do not show that McGee influenced the membership vote.  Instead, the hearing officer simply noted that Turley's grievance was discussed at the membership meeting, that members were allowed to ask questions and make comments, and that the membership then voted thirteen to three not to pursue the grievance.

16

based on his interpretation of the CBA," which, even if mistaken, was a "good faith error in judgment," and the union engaged in "informed decision-making" when "interpret[ing] the contractual seniority provisions." These conclusions, which Turley does not challenge, defeat any argument that the union's decision not to pursue the grievance was irrational or unrelated to legitimate union objectives.

In the end, much like United Water & Sewer Workers, Local 1, 28 Mass. App. Ct. at 364, this is a case where "[a] review of the record indicates that while the [board's] factual findings have a different emphasis from those of the hearing officer, its decision was based on substantial evidence, and it gave the hearing officer's determination of credibility 'substantial deference.'" In concluding that the union did not breach its duty of fair representation to Turley, the board "exercise[d] its judgment and statutory responsibility." Id., quoting

Morris, 405 Mass. at 111.  Substantial evidence supports the board's decision, which is therefore affirmed.[7]

> Decision of Commonwealth
>   Employment Relations Board
>   affirmed.
>
> By the Court (Rubin, Blake &
>   Shin, JJ.[8]),

Assistant Clerk

Entered:  May 28, 2024.

---

[7] The union's request for attorney's fees is denied.

[8] The panelists are listed in order of seniority.