28 Mass. App. Ct. 359                                             359

United Water & Sewer Workers, Local 1 v. Labor Relations Commission.

UNITED WATER & SEWER WORKERS, LOCAL 1 vs. LABOR RELATIONS COMMISSION.

No. 89-P-200.

Suffolk. January 16, 1990. - March 12, 1990.

Present: DREBEN, SMITH, & FINE, JJ.

*Administrative Law*, Hearing. *Labor*, Collective bargaining, Public employment, Unfair labor practice. *Labor Relations Commission.*

In a labor dispute the Labor Relations Commission correctly determined, on the basis of substantial evidence and with "substantial deference" to the hearing officer's determination of credibility, that a prohibited labor practice had not been shown. [362-365]

APPEAL from a decision of the Labor Relations Commission.

*Peter T. Lyons* for United Water & Sewer Workers, Local 1.

*Jean Strauten Driscoll* for Labor Relations Commission.

DREBEN, J. A hearing officer found that the employer, Boston Water and Sewer Commission, had repudiated a collective bargaining agreement by failing to pay employees a $100 cleaning allowance for 1984 and had, thereby, violated § 10(a)(5) of G. L. c. 150E.[1] On the appeal of the employer, the Labor Relations Commission (commission) reversed the

---

[1] General Laws c. 150E, § 10(a), as inserted by St. 1973, c. 1078, § 2, provides that:

"It shall be a prohibited practice for a public employer . . . to: . . . .

"(5) Refuse to bargain collectively in good faith with the exclusive representative as required in section six; . . ."

The parties to a municipal collective bargaining contract have an obligation to implement its provisions, and a refusal to do so may be found to be a prohibited practice. *Mendes* v. *Taunton*, 366 Mass. 109, 119 (1974). See *County of Suffolk* v. *Labor Relations Commn.*, 15 Mass. App. Ct. 127, 130 (1983).

decision of the hearing officer, concluding that neither the text of the collective bargaining agreement nor the negotiations showed that the parties had agreed that the allowance would be paid retroactively for the year 1984. We affirm the commission's order dismissing the complaint against the employer.

In reviewing the decision of the commission, we are guided by the principle established by *Morris* v. *Board of Registration in Medicine*, 405 Mass. 103, 111 (1989), cert. denied, 110 S.Ct. 503 (1989), and *Vinal* v. *Contributory Retirement Appeal Bd.*, 13 Mass. App. Ct. 85, 101 (1982), that when the subsidiary findings of a hearing officer rest on the hearing officer's "resolution of credibility questions" they are entitled to "substantial deference."[2] In determining whether there "was substantial evidence on the whole record" to support the commission's decision, *Morris*, 405 Mass. at 111, we turn to the findings of the hearing officer and then to those of the commission.

1. *Hearing Officer's Findings.*

In May, 1985, the employer and United Water & Sewer Workers, Local 1 (union), entered into a collective bargaining agreement for the period July 1, 1984 to June 30, 1986. Article 19, § 7, of the agreement provided as follows:

> "Employees may be required to wear uniforms as provided by the [employer]. Any employee who is required to wear a uniform shall be paid an annual cleaning allowance of one hundred dollars ($100)."

In June or July, 1985, after the agreement was executed, the employer paid retroactive wage increases and certain other monetary benefits to July 1, 1984, but did not include a cleaning allowance for 1984. The union president discussed the matter with an officer of the employer, in July, 1985, but was informed that because a representation question was

---

[2]To the extent that the union argues that findings of fact based on oral testimony "will not be reversed unless plainly wrong," the union is proposing a standard which has been rejected as "too rigid." *Vinal* v. *Contributory Retirement Appeal Bd.*, 13 Mass. App. Ct. at 98.

28 Mass. App. Ct. 359      361

United Water & Sewer Workers, Local 1 *v.* Labor Relations Commission.

then pending, it was not appropriate to make a monetary award to the union. He did not say that the 1984 uniform cleaning allowance was not due. After the union won the representation election, the employer refused to pay a cleaning allowance for 1984.

In August, 1985 the employer issued a written directive to its employees that, effective September 1, 1985, uniforms would be required and that employees would be subject to disciplinary action if they did not wear them.

There was conflicting testimony before the hearing officer as to whether uniforms were required to be worn prior to the August, 1985 written directive. The hearing officer made the following specific findings. When Evans (the union president) and Hart, another employee, were hired (both had worked for the employer prior to 1980), they were told by their supervisors to pick up their uniforms and to wear them. Employees were issued uniforms and almost all of them wore uniforms except yard clerks and construction inspectors.

For several years, the employer had leased uniforms and had paid for their cleaning. Sometime prior to June 1983, however, problems developed with the vendor, and employees would often receive another person's uniform when the uniforms were returned from the cleaner. On June 9, 1983, the employer wrote the union a letter saying that it was contemplating implementing a different plan: the employer would provide uniforms for bargaining unit members; their use would be mandatory; and the employees would be responsible for their maintenance. Discussions were held with the union, uniforms were chosen, and "this bargaining was memorialized" in Article 19, § 7, of the agreement entered into in May, 1985. Prior to August, 1985, the employer had no written rule requiring uniforms. A few employees had chosen not to wear them, and, with one possible exception, were not forced to do so.

The foregoing findings were listed in a section of the hearing officer's decision entitled "Findings of Fact." In a portion entitled "Opinion" the hearing officer made the following additional findings:

"There is little doubt that practically all employees, except yard clerks and construction inspectors, were instructed by their supervisors to wear uniforms. This is supported by the testimony of Evans and Hart. Additionally, it is difficult to believe that the employer would issue uniforms if the employees were not required to wear them. . . . A very few employees resisted the requirement, and, with possibly one exception, the employer did not consider their recusancy [*sic*] important enough to warrant censure. Thus, it is not difficult to understand the union's expectancy that the 1984 cleaning allowance would be paid just as the 1984 retroactive wage increase had been. *However, it is conceded that neither party raised the issue of total retroactivity at the table, and there may not have been a meeting of the minds upon it*" (emphasis supplied).

Relying on the facts that the employer did not, in discussions with the union in July, 1985, deny that the cleaning allowance payments were due, that it allowed the matter to languish, and that the uniform requirement had been in effect for several years "albeit . . . seldom, if ever, enforced," the hearing officer also inferred that the August, 1985 memorandum was issued "in contemplation of this issue being submitted to a neutral agency for final resolution." He concluded that the employer's actions "raise strong suspicion of a cover-up," and that the employer committed a prohibited practice in repudiating the agreement.

2. *Findings and Conclusion of the Commission.*

The commission, on the record before it, which included supplementary statements filed by the parties, see 456 Code Mass. Regs. § 13.13(6) (1986), "affirmed" the findings of the hearing officer except as "modified." Both the commission and the hearing officer found: (1) that vendor problems in 1983 resulted in employees' "often"[3] receiving another person's uniform; (2) that the employer desired to implement a new policy in 1983, that a joint committee was created to

---

[3]"Often" was the term used by the hearing officer.

choose uniforms and that the new policy was memorialized in the agreement reached in May, 1985; (3) that employees were generally not subjected to sanctions for failing to wear uniforms; (4) that prior to September, 1985 there was no written policy requiring uniforms; and (5) that the retroactivity of the provision for 1984 was not discussed in May, 1985 when the new collective bargaining agreement was concluded, and that there may not have been a meeting of the minds upon it.

The commission, however, disagreed with the hearing officer's conclusion that the employees were required to wear uniforms in 1984. In explaining its factual disagreement with the hearing officer, the commission in a footnote stated:

> "The hearing officer found on the basis of the testimony of employees Evans and Hart, who both were union officers at all times material to this case, that all employees were required to wear uniforms at all times relevant to this action. On appeal the Employer contested this finding and noted contrary evidence that not all employees were required to wear uniforms prior to September 1, 1985. We credit Evans['s] and Hart's testimony that *they* were required to wear uniforms during their employment with the Employer. The evidence as a whole, however, establishes that not all employees were required to wear uniforms prior to September 1, 1985. Not all employees had complete uniforms and, generally, employees were not subjected to sanctions for failing to wear uniforms."

The commission also disagreed with the implied finding of the hearing officer that the August, 1985 memorandum was a ruse and found "that the evidence does not warrant the conclusion that the employer issued its August directive in order to build a record for litigation." According to the commission, the employer had promulgated the order to "clarify employee responsibilities."

A comparison of the commission's opinion with that of the hearing officer shows that, while the commission rejected the

hearing officer's finding that practically all employees were required to wear uniforms (the hearing officer's actual finding was "were instructed by their superiors to wear uniforms"), the rejection was not a matter of according credibility to different witnesses. Rather, the commission determined that, in the context of all the findings, a prohibited practice had not been shown. The commission concluded that the employer had not refused to implement a provision that was "unambiguous by virtue of either the language of the provision or the parties' bargaining history."

A review of the record indicates that while the commission's factual findings have a different emphasis from those of the hearing officer, its decision was based on substantial evidence, and it gave the hearing officer's determination of credibility "substantial deference."[4] The commission emphasized the ambiguity of the negotiations, the failure of the parties to discuss the retroactivity of the provision, and the absence of an agreement of the parties as to payment for 1984. Because of these circumstances, the employer's actions were not, in the commission's view, a repudiation of its duties under G. L. c. 150E, 10(*a*)(5). See *Mendes* v. *Taunton*, 366 Mass. 109, 119 (1974), and material cited in n.15 of that opinion, acknowledging that even if there is a breach of a collective bargaining contract, every breach may not be a per se prohibited labor practice. In reaching its legal conclusion, the commission "exercise[d] its judgment and statutory responsibility," see *Morris* v. *Board of Registration in*

---

[4]The disagreement of the commission with the finding of the hearing officer as to the motive of the employer in issuing the August, 1985 memorandum may also be considered not a rejection of a finding based on credibility. There was no testimony in support of the hearing officer's "suspicion" of a cover up, and the inference he drew may be viewed as a "derivative" inference which, perhaps, is not entitled to substantial deference by the commission. See *Penasquitos Village, Inc.* v. *NLRB*, 565 F.2d 1074, 1078-1079 (9th Cir. 1977); *NLRB* v. *Stor-Rite Metal Prod.*, 856 F.2d 957, 964 (7th Cir. 1988). See also *NLRB* v. *Universal Camera Corp.*, 190 F.2d 429, 432 (Frank, J., concurring), on remand from 340 U.S. 474 (1951). In any event, our review of the record indicates that the commission could well determine that the inference of improper motive was not supported by the evidence.

*Medicine*, 405 Mass. at 111, and sufficiently explained its reasons for rejecting some of the findings of the hearing officer. *Ibid.*

> *Order of the Labor Relations*
> *Commission dismissing the*
> *complaint affirmed.*