Troy, Paul E., J.
INTRODUCTION
Plaintiff, American Zurich Insurance Company, by and through its representative, Travelers Indemnity Company (collectively, “Travelers”), brought this action pursuant to G.L.c. 30A. Travelers asserts that defendant, Department of Industrial Accidents (“DIA” or “the Department”), acted arbitrarily, capriciously, and without substantial evidence when it determined that the workers of co-defendant, James McMorrow d/b/a JFM Construction (“McMorrow”), were “independent contractors” rather than “employees” pursuant to G.L.c. 149, §148B. Travelers further argues that the Department’s erroneous ruling enabled McMorrow to shirk his responsibiliiy to pay Travelers for requisite increases in workers’ compensation insurance premiums to cover those workers under the Massachusetts Workers’ Compensation Act, G.L.c. 152. As such, Travelers argues it is entitled to Judgment on the Pleadings pursuant to Superior Court Standing Order 1-96 and Mass.R.Civ.P. 12(c). The DIA and McMorrow (collectively “defendants”) filed cross motions for Judgment on the Pleadings asserting that because the Department’s ruling was supported by substantial evidence, and was not arbitrary or capricious, its decision was proper.
For the following reasons, Plaintiffs Motion for Judgment on the Pleadings is DENIED and *225 Defendants’ Cross Motions for Judgment on the Pleadings are ALLOWED.
BACKGROUND
McMorrow is a licensed home improvement contractor who began doing business as “JFM Construction” in Barnstable in 2001. He acted as a contractor for small home improvement jobs such as painting, carpentry, wallpaper removal, and wall re-siding although he personally did not perform the home improvement work. Instead, McMorrow contracted with either a homeowner or a licensed construction supervisor to perform the overall improvements, and he would then retain individuals who had the necessary skills to perform the specific tasks, such as painting, carpentry, and siding.
On June 11, 2001, McMorrow applied to the Workers’ Compensation Rating and Inspection Bureau of Massachusetts (“the Bureau”) for coverage from the Bureau’s Assigned Risk Pool.[3] The Bureau assigned McMorrow to Travelers, who covered McMorrow under an “if any” workers’ compensation policy. The policy at issue in this case insured McMorrow from June 22, 2003 to June 22, 2004, and was renewed for the following year from June 22, 2004 through June 22, 2005.
On July 23, 2004, Travelers audited McMorrow’s payroll records. The audit focused on fifteen individuals who had performed work for McMorrow in the past. One of these fifteen workers, a siding installer named James Lamoreaux (“Lamoreaux”), had injured himself on October 14, 2003 with a nail gun while working on a job for McMorrow. Lamoreaux was subse-quently treated at a local hospital for his injury and thereafter filed a workers’ compensation claim under McMorrow’s insurance policy. Upon questioning by the hospital staff as to whether Lamoreaux worked for him, McMorrow replied in the affirmative. The hearing officer determined that McMorrow’s response to the hospital was not an admission concerning Lamoreaux’s employment status, but rather simply a statement of fact that he was working on a job with McMorrow as an independent contractor.[4] Notwithstanding his independent contractor status, Travelers paid $417.63 on Lamoreaux’s workers’ compensation claim under McMorrow’s policy.
The auditor generated a report of her observations regarding the employment practices within McMorrow’s business. The report stated that McMorrow was “a sole proprietor acting as a home improvement and repair contractor” and that he “work[ed] for homeowners and other general contractors.” The auditor also noted that the homeowner “does all operations at the job sites as well as coordi[nation] of workers and estimating jobs.” Moreover, she stated that each of the workers at issue had his own workers’ compensation insurance. Notwithstanding that separate insurance coverage, the auditor — and subsequently Travelers — concluded that the workers were in fact McMorrow’s “employees.” Soon thereafter, Travelers demanded that McMorrow pay it an additional $22,400[5] in premiums for these “employees.” After McMorrow refused, he appealed Travelers’ premium determination to the DIA pursuant to G.L.c. 152, §65(b).
The Department held hearings on McMorrow’s appeal on November 4, 2004 and March 23, 2005. Both parties were present during the hearings, were represented by counsel, and were allowed to introduce written evidence into the record. Although McMorrow testified at both hearings, Travelers chose not to call any witnesses. After analyzing the evidence before him, the hearing officer determined, in a written decision dated July 12, 2005, that the fifteen workers in question were independent contractors and not McMorrow’s employees.
On August 15, 2005, Travelers filed an appeal of the Department’s decision to this court pursuant to G.L. chapters 30A and 152, and now seeks a ruling in its favor for Judgment on the Pleadings.

DISCUSSION

I. Standard of Review — G.L.C. 30A
G.L.c. 30A, §14 grants any person or entity aggrieved by a decision of any agency in an adjudicatory proceeding the right to appeal that decision to the Superior Court. Unless irregularities in the procedure before the agency are alleged, a court’s review of an agency decision is confined to the administrative record. G.L.c. 30A, §14(5). The party appealing an administrative decision pursuant to G.L.c. 30A, §14 bears the burden of demonstrating the invalidity of that- decision. Merisme v. Bd. of Appeals on Motor Vehicle Liability Policies & Bonds, 27 Mass.App.Ct. 470, 474 (1989).
This court may reverse or modify the agency decision “if it determines that the substantial rights of any party may have been prejudiced” because the decision is “unsupported by substantial evidence,” or is “arbitraiy or capricious, an abuse of discretion, or otherwise not in accordance with the law.” G.L.c. 30A, §14(7). Thus, this court will affirm an agency’s decision unless the findings and conclusions are unsupported by substantial evidence or based on an error of law. Id. See, e.g., Salem v. Mass. Comm’n. Against Discrimination, 44 Mass.App.Ct. 627, 640-41 (1998) (examining an appeal of MCAD’s decision pursuant to an anti-discrimination claim under G.L.c. 151B). “Substantial evidence is ‘such evidence as a reasonable mind might accept as adequate to support a conclusion,’ taking ‘into account whatever in the record detracts from its weight.’ ” Lycurgus v. Director of Div. of Employment Security, 391 Mass. 623, 627-28 (1984) (citations omitted). See G.L.c. 30A, §1(6).
When reviewing an agency’s decision, “the court shall give due weight to the experience, technical competence, and specialized knowledge of the agency, *226 as well as to the discretionary authority conferred upon it.” G.L.c. 30A, §14(7). “If [an] agency has, in the discretionary exercise of its expertise, made a ‘choice between two fairly conflicting views,’ and its selection reflects reasonable evidence, [a] court may not displace [the agency’s] choice . . . even though the court would justifiably have made a different choice had the matter been before it de novo.” Lisbon v. Contributory Ret. Appeal Bd., 41 Mass.App.Ct. 246, 257 (1996) (citations omitted).
Finally, reviewing courts are reluctant to disturb a hearing officer’s findings, or frustrate his or her credibility determinations of fact witnesses who testify at the hearing. United Water & Sewer Workers, Local 1 v. Labor Relations Comm'n., 28 Mass.App.Ct. 359, 360 (1990). Instead, “[w]hen the determination of motive or purpose hinges entirely upon the degree of credibility to be accorded the testimony of interested witnesses, the credibility findings of the Trial Examiner are . . . not to be easily ignored.” Vinal v. Contributory Retirement Appeal Bd., 13 Mass.App.Ct. 85, 100 (1982).
II. “Employee" v. “Independent Contractor” — G.L.C. 149, §148B
Proper classification of an individual as an “independent contractor” or an “employee” may determine whether an employer has violated certain provisions of Massachusetts labor laws, including employee entitlement to workers’ compensation. See G.L.c. 149, § 148B(d); G.L.c. 152, § 14. Pursuant to G.L.c. 149, § 148B (“the 148B test”), an employer seeking to establish that his workers are “independent contractors” and not “employees” must prove that:
(1) the individual is free from control and direction in connection with the performance of the service both under his contract for the performance of service and in fact; and
(2) the service is performed outside the usual course of the business of the employer; and
(3) the individual is customarily engaging in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.
Because the 148B test is conjunctive, all three elements must be present for an individual to be deemed an independent contractor, as opposed to an employee. See Anthol Daily News v. Bd. of Review of the Div. of Unemployment and Training, 439 Mass. 171, 175 (2003).[6]
In analyzing the first prong of the 148B test, involving the employer’s right to control and direct his workers, courts look to the common law of workers’ compensation as its basis. See Anthol, 439 Mass. at 177, citing O’Malley’s Case, 361 Mass. 504, 504 (1972); Brigham’s Case, 348 Mass. 140, 141-42 (1964) (primary test is right to control an individual’s work performance). The essence of the distinction under the common law has historically been the right of the employer to control the details of the worker’s performance. Id. Moreover, whether the worker is supervised “not only as to the results to be accomplished but also as to the means and methods that are to be utilized in the performance of the work” is examined. Maniscal Co. v. Director of the Div. of Empl. Sec., 327 Mass. 211, 212 (1951), quoting Griswold v. Director of the Div. of Empl. Sec., 315 Mass. 371, 372-73 (1944). However, the “test is not so narrow as to require that a worker be entirely free from direction and control from outside forces.” Anthol, 439 Mass. at 177 (citations omitted). Other factors used to determine whether the employer controlled and directed the workers’ performance include such things as: (1) whether the worker is paid by the job or by the hour; (2) whether the employer provides tools, equipment, or materials on the job; and (3) whether the relationship can be terminated without any liability on the part of the employer. MacTavish v. O’Connor Lumber Co., 1992 WL 253660 at *3 (Mass.Dept.Ind.Acc. Sept. 22, 1992).
The second element of the 148B test addresses whether the scope of the services is performed outside the usual course of the employer’s business. G.L.c. 149, §148B(2). Generally, a worker whose services form a regular and continuing part of the employer’s business, and whose method of operation is not such an independent business that it forms in itself a separate route though which his costs of industrial accidents can be channeled, should be found to be an employee and not an independent contractor. See, e.g., Anthol, 439 Mass. at 178-79 (news carriers’ services were performed in the usual course of newspaper publishing company’s business). On the other hand, if the worker is performing services that are part of an independent, separate, and distinct business from that of the employer, the worker is generally considered to be an independent contractor. MacTavish 1992 WL 253660 at *3.
The final element of the 148B test asks whether the worker is “customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.” G.L.c. 149, §148B(3). According to Anthol the relevant inquiry of this prong thus becomes:
whether the service in question could be viewed as an independent trade or business because the worker is capable of performing the service to anyone wishing to avail themselves of the services, or, conversely, whether the nature of the business compels the worker to depend on a single employer for the continuation of the services.
439 Mass. at 181.
After reviewing the administrative record, the court finds that the Department did not act arbitrarily, capriciously or without substantial evidence when it determined that the fifteen workers in this case were independent contractors and not employees. The court must give deference to the Department’s decision and not overturn specific findings unless the decision is “unsupported by substantial evidence,” or *227 is “arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law.” G.L.c. 30A, §14(7). This burden of proof rests with Travelers to demonstrate the invalidity of the Department’s decision. Merisme, 27 Mass.App.Ct. at 474. It has failed to do so for the following reasons.
First, Travelers argues that the hearing examiner’s findings were not based on substantial evidence and therefore the DIA’s decision must be overturned. The administrative record reflects that the hearing officer’s findings were largely based on McMorrow’s testimony which Travelers failed to counter by presenting its own fact witnesses. The hearing officer was in the best position to make credibility determinations about McMorrow and anyone else who testified at the hearing, and this court will not disturb the examiner’s witness credibility determinations. See United Water, 28 Mass.App.Ct. at 360; Vinal, 13 Mass.App.Ct. at 100. The fact that the examiner’s determinations were made largely upon McMorrow’s testimony alone does not mean the examiner did not have the requisite substantial evidence in making his ruling. Rather, Travelers (1) chose not to present its own fact witnesses, thus diminishing its ability to directly plead its case to the examiner; (2) had the opportunity to cross-examine McMorrow, thereby indirectly making its case in the examiner’s presence; and (3) sought to rely solely upon an audit report which the officer deemed was inadmissible hearsay because its contents were unreliable without a fact witness who could speak first-hand about the specific contents of the report and the basis for its conclusions. Based upon the facts presented, the hearing officer had substantial evidence upon which to determine the merits of the case.
Second, Travelers asserts that the Department’s determination that the fifteen workers were independent contractors, and not employees, was erroneous as a matter of law. As its grounds it argues that there is a statutory presumption of employment which McMorrow has failed to rebut via the test established pursuant to G.L.c. 149, §148B. The court does not accept this argument and instead finds that the three elements of the 148B test were met. With regard to the direction and control element of the test, McMorrow testified that the homeowner or prime contractor was responsible for establishing the scope of the work and how it was to be performed. Additionally, three of the fifteen workers at issue submitted separate affidavits corroborating McMorrow’s testimony. In those affidavits, all three men specifically averred that they “worked independently,” “without supervision by JFM [i.e., McMorrow],” that they “utilize[d] [their] own skill and independent judgment in performing the services,” and that the “homeowner and prime contractor determine[d] the particular elements of the job.” The record further demonstrates that McMorrow executed independent contractor agreements with several of the workers in question, including Lamoreaux, who was injured by a nail gun. Finally, the record also supports the hearing officer’s conclusion that all of the workers were responsible for bringing their own equipment, tools, and materials to the job site, and did so except on scant occasions where McMorrow loaned materials, which the examiner found to be inconsequential.
The final two elements of the 148B test are also supported by evidence in the administrative record. Regarding whether the workers performed services within McMorrow’s “usual course of business,” McMorrow testified that he did not know how to, nor did he perform, most tasks associated with the job, including painting, carpentiy, and siding. Conversely, the workers in question held themselves out as independent businessmen who were specifically trained in these areas and did the work on an independent contractor basis. The three previously mentioned affidavits reflect that one worker was a painter, and the two others were carpenters. Moreover, the independent contractor agreements, executed between McMorrow and six other workers, which the hearing officer credited, indicate that the work was not part of McMorrow’s “usual course of business.” Finally, the three men who submitted affidavits stated that they each “own[ed] their own business” and were “free to work for any contractor” they wished. Thus, the court finds that substantial evidence existed for the hearing officer to conclude that the workers were independent contractors and not employees pursuant to G.L.c. 149, § 148B.

ORDER

For the foregoing reasons, the court' finds that plaintiff has failed to establish that the Department’s findings were arbitrary, capricious, or not supported by substantial evidence. Therefore, it is hereby ORDERED that Plaintiffs Motion for Judgment on the Pleadings is DENIED and Defendants’ Cross Motions for Judgment on the Pleadings are ALLOWED.

Under G.L.c. 152, §65A, an employer who is unable to obtain workers’ compensation coverage in the voluntary market may apply to the Bureau for coverage under the Bureau’s Assigned Risk Pool. Any insurance carrier that intends to write or continue to write workers’ compensation policies in Massachusetts is required to accept assignments of uninsured employers from the Bureau. G.L.c. 152, §65A(1).

Lamoreaux had in fact executed an independent contractor agreement with McMorrow on October 6, 2003, one week before his injury.

Travelers specifically contended that McMorrow owed an additional $7,000 for the June 22, 2003 through June 21, 2004 policy period; $7,000 for the June 22, 2004 through June 21, 2005 policy period; and $8,400 for the June 22, 2005 through June 21, 2006 period in overall premiums. The policy was cancelled on June 22, 2005 based on McMorrow’s refusal to pay the renewal premiums.

The court notes Anthol construed G.L.c. 151A, §2, which is virtually identical to G.L.c. 149, §148B.