Troy, Paul E., J.
*601 INTRODUCTION
Plaintiff, Cedarmere Ventures, LLC (“Cedarmere”), brought this action pursuant to Superior Court Standing Order 1-96, G.L.c. 30A, §14, and G.L.c. 83, §3 seeking judicial review of the decision made by defendant, the Cohasset Sewer Commission (“Commission”), which denied Cedarmere a sewer connection permit to hook up to the Town of Cohasset’s (“Town”) common sewer system. Cedarmere also moves to strike a specific affidavit and other exhibits attached to defendants’ opposition asserting these documents are outside the administrative record. Defendants oppose plaintiffs motion by arguing that the Commission’s decision in denying the sewer connection permit was proper because it was in conformily with a prior judgment by this court and supported by substantial evidence. For the following reasons, Plaintiffs Motion for Judgment on the Pleadings is DENIED and Judgment shall enter for defendant.
BACKGROUND
On September 5, 2003, Cedarmere filed an application for a sewer connection permit with the Commission. Cedarmere’s proposed use in securing the permit was to support newly developed senior citizen multi-family residences comprising 105 two-bedroom units. The development was located on several contiguous parcels of land totaling approximately 41 acres located at Chief Justice Cushing Highway and Beechwood Street in Cohasset. The prior use of the land was for single-family home and accessory structures.
The Commission held hearings on Cedarmere’s application on June 30, August 18, September 16, and October 29, 2003 after providing the notice required by applicable law. On October 29, 2003, the Commission denied the application on the grounds that there was insufficient capacity for additional connections to the Town’s sewer main as required by the Second Amended Final Judgment (“the Judgment”) in Commonwealth of Massachusetts v. Town of Cohasset, Suffolk Co. Super. Ct., C.A. No. 38652 (April 17, 1997).[2] In that case, the Commonwealth sued the Town for its inadequate subsurface disposal systems and its failure to comply with provisions of the Massachusetts Clean Waters Act, G.L.c. 21, §§26-53. Since that time and pursuant to the Judgment, all issues concerning the Town’s sewer system and the sewage treatment plant were to be directed to the Town’s Board of Health (“Board”). The Judgment specifically mandated that the Town:
shall not authorize or allow any new connections, any increase in flow from existing connections, or extensions of its sewer system except those for which the [ ] Board . . . has found and certified to [the Massachusetts Department of Environmental Protection] DEP in writing, or [that] DEP has itself determined, are necessary to abate an imminent hazard to public health or the environment caused by inadequate sewage disposal. (Emphasis added.)
The Judgment further mandated that the Commission determine critical areas within the Town that were suffering the most from inadequate and failing subsurface disposal systems. The Commission subsequently designated these critical areas as the “Central Sewer District” which were to receive top priority for connection to the Town’s sewer system to abate the imminent public health hazards to the Town’s residents. The areas outside the Central Sewer District were therefore extraneous to predetermined, authorized and existing connections determined by the Commission and thus subject to approval by the Board, and ultimately, the DEP pursuant to the Judgment.
In addition to reliance upon the Judgment, on October 29, 2003, in a detailed written decision, the Commission made numerous specific findings[3] further supporting its denial of Cedarmere’s sewer permit application.
DISCUSSION
I. Standard of ReviewG.L.c. 30A
G.L.c. 30A, §14 grants any person or entity aggrieved by a decision of an agency in an adjudicatory proceeding the right to appeal that decision to the Superior Court. Unless irregularities in the procedure before the agency are alleged, a court’s review of an agency decision is confined to the administrative record. G.L.c. 30A, §14(5). The party appealing an administrative decision pursuant to G.L.c. 30A, §14 bears the burden of demonstrating the invalidity of that decision. Merisme v. Bd. of Appeals on Motor Vehicle Liability Policies & Bonds, 27 Mass.App.Ct. 470, 474 (1989).
This court may reverse or modify the agency decision “if it determines that the substantial rights of any party may have been prejudiced” because the decision is “unsupported by substantial evidence,” or is “arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law.” G.L.c. 30A, §14(7). Thus, this court will affirm an agency’s decision unless the findings and conclusions are unsupported by substantial evidence or based on an error of law. Id. See, e.g., Salem v. Mass. Comm’n. Against Discrimination, 44 Mass.App.Ct. 627, 640-41 (1998) (examining an appeal of MCAD’s decision pursuant to an anti-discrimination claim under G.L.c. 151B). “Substantial evidence is ‘such evidence as a reasonable mind might accept as adequate to support a conclusion,’ taking ‘into account whatever in the record detracts from its weight.’ ” Lycurgus v. Director of Div. of Employment Security, 391 Mass. 623, 627-28 (1984) (citations omitted). See G.L.c. 30A, §1(6).
When reviewing an agency’s decision, “the court shall give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.” G.L.c. 30A, §14(7). “If [an] agency has, in the discretionary exercise of its expertise, made a ‘choice between two fairly conflicting views,’ and its selection reflects reasonable evidence, [a] court may not dis *602 place [the agency’s] choice . . . even though the court would justifiably have made a different choice had the matter been before it de novo.” Lisbon v. Contributory Ret. Appeal Bd., 41 Mass.App.Ct. 246, 257 (1996) (citations omitted).
Finally, reviewing courts are reluctant to disturb a hearing officer’s findings, or to frustrate his or her credibility determinations of fact witnesses who testify at the hearing. United Water & Sewer Workers, Local 1 v. Labor Relations Comm’n., 28 Mass.App.Ct. 359, 360 (1990). Instead, “[w]hen the determination of motive or purpose hinges entirely upon the degree of credibility to be accorded the testimony of interested witnesses, the credibility findings of the Trial Examiner are . . . not to be easily ignored.” Vinal v. Contributory Retirement Appeal Bd., 13 Mass.App.Ct. 85, 100 (1982).
II. The Sewer Connection
G.L.c. 83, §3 governs connections to common sewer systems within the Commonwealth. That statute provides, in relevant part:
[i]f the board of health of a town making such appropriation shall order land abutting upon a public or private way in which a common sewer has been laid to be connected with such sewer, or if the owner of such land shall make to the board or officer having charge of the maintenance and repair of sewers application to connect his land with a common sewer, such board or officer shall make such connection. (Emphasis added.)
Because of this statute, a town generally has no discretion to deny an applicant the right to connect to a common sewer system unless “the connection would at once overload the sewer and risk serious flooding and danger of injury to persons or property.” Clark v. Bd. of Water & Sewer Commissioners of Norwood, 353 Mass. 708, 710 (1968). In the event that such a danger exists, “immediate compliance with the mandate of the statute would not be required.” Id. Based on the mandatory language used within the statute, administrative hearings are unnecessary and therefore not afforded to applicants for sewer permits under G.L.c. 83, §3.[4]
The Commission is an administrative agency charged with the exclusive authority to create and supervise a system of sewers in the Town pursuant to 1962 Mass. Acts c. 65, §1 et seq. As such, the Commission must adhere to the requirements set forth in G.L.c. 83, §3 regarding applications for connection to the Town’s main sewer line absent existing dangers and other judicial mandates. See Clark, 353 Mass. at 710.
Here, Cedarmere argues that the Commission’s decision denying its sewer connection permit violated G.L.c. 83, §3, and that pursuant to Clark, it had a present legal right to a sewer connection. In addition, Cedarmere asserts that pursuant to Clark, “[t]he sewer commissioners are not empowered to postpone presently sought connections [to give precedence to connections] contemplated for the future.” 353 Mass. at 711. In contrast, the Commission argues that G.L.c. 83, §3 is inapplicable to this case because it is superseded by the Judgment and not wholly inconsistent with Clark. Although the Commission concedes that G.L.c. 83, §3 generally mandates sewer connections when the appropriate application is filed, the Supreme Judicial Court stated in Clark that strict compliance with the statute is not required if the connection poses a danger or risk of harm to the public. 353 Mass. at 710. The Commission further asserts that the facts in Clark are distinguishable from this case because the defendant there, the Norwood Sewer Commission, was not “legally or equitably committed to other connections" as the Cohasset Sewer Commission was here by the requirement that it comply with the Judgment. Id. at 711.
Based on its review of the record, the court finds that the Commission’s decision denying the sewer permit to Cedarmere was supported by substantial evidence and was not arbitrary or capricious. Moreover, the court finds that unlike the petitioners in Clark, who were deemed to have had a legal right to a sewer connection in the Town of Norwood, Cedarmere is not similarly entitled here because of its obligation to comply with the Judgment.
In support of its decision to deny Cedarmere’s sewer permit application, the Commission cited some thirty-one reasons, including the following:
(1) insufficient capacity for additional connections to the Cohasset sewer main beyond those areas designated for connection by the May 1997 Facility Plan, the Judgment and as approved Town Meeting;
(2) no present capacity for additional connections to the sewer main beyond those required to allow for full compliance with the Judgment (i.e., the Central Sewer District);
(3) any alleged obligation to grant a sewer connection to applicant pursuant to G.L.c. 83, §3 was superseded by the Judgment;
(4) the Commission’s Rules and Regulations required that when capacity in the Cohasset sewer system became available it must be provided to existing homes before being provided to proposed new homes;
(5) the expanded 300,000 gallons per day wastewater treatment plant was adequate only to satisfy homes, businesses, and approximately 27 build-able lots within the geographically delineated Central Sewer District approved by the 1997 annual Town Meeting;
(6) the proposed development lies outside the Town Meeting designated Central Sewer District, and no new sewer had been extended beyond this district unless approved and certified by Town Meeting to the DEP; and
(7) the Central Sewer District was at its design capacity and the system could not be expanded without jeopardizing it current National Pollutant *603 Discharge Elimination Systems (NPDES) Permit as required by the DEP and the U.S. Environmental Protection Agency (EPA).
Moreover, Cedarmere’s proposal to build 105 two-bedroom residences was given to engineering consultants, Tutela Engineering Associates, Inc., which reviewed Cedarmere’s application and concluded that at the time of Cedarmere’s application, the wastewater treatment plant was close to its average daily design flow capacity and the project would have increased flow capacity by an estimated 14,000 gallons per day.
These findings are not insubstantial, and the record is replete with further data supporting the Commission’s decision to deny Cedarmere’s sewer permit application. In that the Town had been sued by the Commonwealth in 1979 for its failure to comply with the Massachusetts Clean Waters Act and inadequate subsurface disposal systems, and was subject to strict compliance since then pursuant to several judgments, including the current Second Amended Final Judgment, the Commission did not violate G.L.c. 83, §3 by denying the application. Instead, the Judgment superseded any obligation the Commission would have had to approve the connection under that statute. Finally, the Commission’s denial is not entirely inconsistent with Clark as Cedarmere argues. Rather, the Clark court determined that the mandates of G.L.c. 83, §3 are not absolute when “the connection would... overload the sewer and risk serious flooding and danger of injury to persons or property” or when “the town is legally... committed to other connections.” 353 Mass. at 710-11. Here, substantial evidence existed to support the Commission’s decision that the sewer system and treatment plant would be overloaded and thereby pose a risk of flooding and/or danger to the community, especially by expanding connectivity to non-previously designated areas. The Town was legally committed to make and maintain connections within the Central Sewer District only as designated by the Commission pursuant to the Judgment which was the remedy imposed upon the Town to alleviate its inadequate subsurface disposal systems. Therefore, pursuant to the Judgment, the Commission’s decision was supported by substantial evidence.
ORDER
For the foregoing reasons, the court finds that plaintiff has failed to establish that the Board’s findings were arbitrary, capricious, not supported by substantial evidence, or contrary to law. Therefore, it is hereby ORDERED that Plaintiffs Motion for Judgment on the Pleadings be DENIED[5] and Judgment shall enter for defendant.

The Commonwealth initially brought suit against the Town in November 1979 alleging that discharges from the Town’s sewage treatment plant were in violation of the Massachusetts Clean Waters Act, G.L.c. 21, §§26-53. That action was resolved by an Agreement for Judgment between the Town and the Commonwealth, dated February 13, 1980, entered by this court. On October 25, 1994, after a special town meeting by the Town’s Board of Selectmen, the Town approved an Amended Final Judgment which was entered by this court on November 8, 1994. At that time, the court retained jurisdiction to modify the terms oftheAmended Final Judgment which it did on April 17,1997, to that of the Second Amended Final Judgment, which is in effect today.

These findings are enumerated in detail in the Commission’s “Decision On Application Of King Taylor Cohasset LLC (i.e., Cedarmere) For Sewer Service Connection.” See Exhibit 1 of the record.

Despite the lack of statutory support for an administrative hearing pursuant to G.L.c. 83, §3, the court notes that because the Commission held a hearing and made detailed, specific findings for denial of Cedarmere’s application, this motion is being reviewed pursuant to G.L.c. 30A. In addition, on Cedarmere’s certiorari claim, “[t]he standard of review . . . is ‘to correct substantial errors of law apparent on the record adversely affecting material rights.’ ” MacHenry v. Civil Service Comm'n, 40 Mass.App.Ct. 632, 634 (1996), quoting Commissioners of Civil Service v. Municipal Ct. of Boston, 369 Mass. 84, 90 (1975). Therefore, judicial review under both G.L.c. 30A and certiorari standards are essentially the same and the court will not reverse the Commission’s decision unless it was arbitrary, capricious, or not supported by substantial evidence. See G.L.c. 30A, §14.

After review of plaintiffs motion to strike the Kasperowicz Affidavit, the motion is denied for essentially the reasons submitted in defendant’s opposition including that the affidavit is largely a reiteration of the reasons articulated in the Commission’s administrative decision. Further, the court accepts Kasperowicz’s averment that Exhibit A to his affidavit was part of the Commission’s decision.