Kirpalani, Maynard, J.
INTRODUCTION
The plaintiffs, Katherine Sandoval (“Sandoval”), Noel Van Wagner (“Van Wagner”), Bonnie Griffin (“Griffin”), and Amy Bloodgood (“Bloodgood”) (collectively the “Plaintiffs”) worked for the defendant, M.J.F. Bowery Corporation d/b/a Ten’s Show Club (the “Club”), an adult entertainment facility located in Salisbuiy, Massachusetts, as exotic dancers. This matter is currently before the court on Plaintiffs’ Motion for Partial Summary Judgment, requesting the court determine, as a matter of law, that they are employees under G.L.c. 149, §148B. For the reasons explained below, the Motion for Partial Summary Judgment will be ALLOWED.
BACKGROUND
The undisputed facts, and the disputed facts viewed in the light most favorable to the Club as the non-moving parly, are as follows.
The Club is an adult entertainment facility and maintains an adult entertainment license as well as a liquor license from the Town of Salisbury. In addition to employing several bartenders and bouncers, the Club has dancers that perform nude on stage, as well as in private, for the entertainment of its customers. The Plaintiffs are dancers that performed at the Club.[3] Mark J. Filtranti (“Filtranti”) is the president and sole owner of the Club. He is also the sole owner of M.J.F. Bowery LLC, Series C, which owns the real estate on which the Club is located.
The Club is arranged so that the “main stage” is in the middle of the first floor. There are chairs all around the stage as well as tables and chairs on the floor facing the stage.[4] There is also a bar on each side of the stage. In addition, on the second floor, there is a balcony overlooking the stage. The Club is open to customers weekdays from 4 p.m. to 1 a.m. and weekends from 12 p.m. to 1 a.m. and the customers pay a five to fifteen dollar cover charge before being allowed to enter.
Gena Koulouras (“Koulouras”) is the Club’s Entertainment Coordinator. She runs amateur nights at the Club, which are the primary source for hiring new dancers. Some of the dancers who attend the amateur nights are seeking a regular location at which to dance and they seek out Koulouras to arrange a time to come to the Club and dance. There is no training or instruction involved.[5] Although the majoriiy of the amateur night participants are, at their request, allowed to perform at the Club, ultimately, Koulouras selects and schedules only those she believes are “going to cut it” as dancers.[6]
In her role as Entertainment Coordinator, Koulouras is responsible for ensuring the customers are properly entertained. She prepares schedules for the dancers on a monthly basis. The dancers interested in working the coming month inform her of their *12 availability and she schedules them accordingly. Koulouras maintains a master schedule and gives each dancer a copy of their individual schedule. Normally, she schedules a minimum of six dancers per shift. If a dancer cannot make a shift, the dancer must notify Koulouras and she asks a dancer that is not on the schedule to come in to work.
The Club does not pay its dancers, and did not pay the Plaintiffs, wages, salaries, or fees in consideration for their work at the Club. In fact, the dancers are required to pay a “tip-out” fee to the Club at the beginning of each shift. The Club distributes the tip-out money to the disc jockey on a nightly basis. As of 2008, the tip-out fee was forty dollars Monday-Thursday, sixty dollars on Friday and Saturday, and fifty dollars on Sunday. The dancers were not allowed to negotiate a different tip-out fee.
The Club imposes a variety of rules, which the dancers are expected to follow, most of which reflect state and local ordinances. Some of these rules were expressed orally by the managers and some were set forth in memos posted around the club. During the past fifteen years, the Club held three to four meetings, which the dancers were required to attend in order to remain on the dance schedule.
The nightly rotation of dancers who appear on stage is based on which dancers are ready to perform first. The discjockey has the rotation list and he calls the dancers up onto the stage. The stage consists of four connected areas. During their stage routines, the dancers dance to the music and, after the conclusion of two songs, they move from one area of the stage to the next. Each dancer is on stage for eight songs. The dancers are required to remove all their clothing by the time they are finished with their stage routine. During the dancer’s stage routine, customers pay the dancers tips.
While a dancer is not performing on stage she usually walks around on the floor entertaining or talking with customers. At the request of a customer, a dancer can do a private dance at the customer’s table or a VIP dance in a separate area. The Club establishes a minimum fee of ten dollars for a private table dance and twenty dollars for a VIP dance. The dancers cannot negotiate a lower fee for these dances. In addition, if a dancer misses her rotation on stage, she is charged a twenty-five dollar fee. Usually, if the dancer is performing privately, the customer pays the twenty-five dollar fee so that the dancer can remain with him. This fee is kept in a disc jockey fund maintained by the Club.
In 2008, Koulouras posted a memo in the dressing room concerning attire, stating that, while not on stage, the dancers were to wear gowns and mid-thigh dresses only, no two-piece sets, no robes and no pants. According to Koulouras, she posted the costume limitation because the dancers “were walking around with G-strings and a wrap, or a bikini top and a pair of shorts that wasn’t covering their parts” and the policy was to encourage them “to cover! ] up to a certain degree." According to Filtranti, the dancers “can dress 100,000 ways,” as long as they comply with the general dress code applicable for an upscale gentlemen’s club, noting “it would not be [proper] for [the dancers] to wear a pair of sneakers and a pair of jeans on stage to dance” In addition, the Club has rules about the amount of customer contact. Initially, the Club was a “no contact” club. In March 2009, however, Koulouras posted a revised contact policy. According to the revised policy, a dancer can sit on a customer’s lap as long as they are not nude or topless. Notably, the Club does not have any rule regarding alcohol and the dancers, except that the dancers are treated the same as customers with regard to alcohol intake.[7]
The Club has a website which, in September 2009, contained pictures of the Club and its interior as well as photographs of the dancers. The website contained portrayals of activities at the Club, which were staged, to encourage customers to come to the Club. One section of the website was entitled “the Ten’s Girls,” and had photos of some of the dancers and their stage names. There was also a section inviting patrons to vote for the “Ten’s Girl of the Month.”[8] Other than trying to develop a regular set of clients and keeping them informed as to their performance schedules, the Plaintiffs did nothing further to market themselves; the Plaintiffs did not have personal websites, business cards, or professional photographs.
DISCUSSION
The Plaintiffs claim the Club cannot meet the requirements set forth in G.L.c. 149, § 148B, which must be met in order to demonstrate a worker is an independent contractor and thus, as a matter of law, they should be deemed employees. In reply, the Club states summary judgment should be denied because material issues of fact exist as to whether the Plaintiffs were employees or independent contractors. The court disagrees with the Club, concluding summary judgment is warranted because, pursuant to G.L.c. 149, §148B, the Plaintiffs are employees.
I. The Standard of Review
Summary judgment is appropriate when the record reveals “there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c); Siebe, Inc. v. Louis M. Gerson Co., 74 Mass.App.Ct. 544, 548 (2009). The moving party bears the initial burden of demonstrating the absence of a triable issue and that the summary judgment record entitles him to judgment as a matter of law. Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002), citing Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The moving party may satisfy its burden by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the nonmoving party has no reasonable expectation of proving an *13 essential element of his case at trial. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991). The nonmoving party cannot defeat the motion for summary judgment by resting on its pleadings; rather, it must respond by alleging specific facts demonstrating the existence of a genuine fact. Correllas v. Viveiros, 410 Mass. 314, 317 (1991). The court views the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility, or find facts. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
II. Classification as an Independent Contractor/Employee
Proper classification of a plaintiff as an “independent contractor” or “employee” may determine whether an employer has violated other wage-related laws. According to Massachusetts law, a worker will be considered an employee unless;
(1) [t]he individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and (2) [t]he service is performed outside the usual course of the business of the employer; and (3) [t]he individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.
G.L.c. 149, §148B (emphasis added). Under this analysis, the employer bears the burden of proof, and, “because the conditions are conjunctive, its failure to demonstrate any one of the criteria . . . suffices to establish that the services in question constitute ‘employment.’ ” Athol Daily News v. Board of Review of the Div. of Unemployment and Training, 439 Mass. 171, 175 (2003) (construing G.L.c. 151A, §2, which is largely identical to G.L.c. 149, §148B), citing Silva v. Director of the Div. of Employment Sec., 398 Mass. 609, 613 (1986). There is a rebuttable presumption that “any person performing services for another is an employee unless the employer meets the three prong test.” Rainbow Dev., LLC v. Commonwealth of Massachusetts Dep’t of Indus. Accidents, 2005 WL 3543770 at *2 (Mass.Super. 2005) (Cratsley, J.) [20 Mass. L. Rptr. 377).
A. Direction and Control
Under the first prong of the independent contractor test, the question is “whether the worker is supervised ‘not only as to the results to be accomplished but also as to the means and methods that are to be utilized in the performance of the work[.]’ ” American Zurich Ins. Co. v. Dep’t. of Indus. Accidents, 2006 WL 2205085 at *3 (Mass.Super. 2006) (Troy, J.) [21 Mass. L. Rptr. 224], quoting Maniscal Co. v. Director of the Div. of Employment Sec., 327 Mass. 211, 212 (1951). The test, however, “is not so narrow as to require that the worker be entirely free from direction and control from outside forces.” Athol Daily News, 439 Mass. at 177 (internal quotations and citations omitted). Really, “it is the right of control rather than the exercise of it. . . that is legally determinative.” Rainbow Dev., LLC, 2005 WL 3543770 at *3 (internal quotations and citations omitted).
Although the record establishes the Club exercised, at least, some measure of control over the Plaintiffs by, for example, imposing a number of work rules about what they could charge, what they could wear, their contact with customers, their time on stage, and their work schedules, the Plaintiffs acknowledge there are material issues of fact as to whether this “direction and control” is sufficient to deem them employees. It is, however, unnecessary for the court to determine whether the Club has satisfied the first prong of the independent contractor test because, as is discussed in more detail below, it has failed to meet either the second or third prongs of the test.
B. Usual Course of Employer’s Business
Pursuant to the second prong of the independent contractor test, the employer must prove that the service performed by the worker is outside of its usual course of business. See G.L.c. 149, §148B(2). “The law does not define ‘usual course of business!.]’ ” Chaves v. King Arthur’s Lounge, SUCV2007-02505, slip op. at 2-4 (Mass.Super., July 30, 2009) (McIntyre, J.) (Memorandum of Decision and Order on the Defendant’s Motion for Summary Judgment and the Plaintiffs Cross-Motion for Partial Summary Judgment). Typically, “a worker whose services form a regular and continuing part of the employer’s business .. . should be found to be an employee and not an independent contractor.” American Zurich Ins. Co., 2006 WL 2205085 at *4 (internal quotations and citations omitted). “On the other hand, if the worker is performing services that are part of an independent, separate, and distinct business from that of the employer, the worker is generally considered to be an independent contractor ...” Id. (internal quotations and citations omitted).
The Club claims the fact that the Plaintiffs “pro-vid[ed] services for their own customers cannot be considered the business of the [C]lub.” The court disagrees with the Club’s assessment. As the Plaintiffs point out, the Club hired the Plaintiffs, as well as other dancers, so “its customers will pay the cover charge to come into the club and watch the dancers perform” and so its customers “will purchase alcoholic beverages while watching.” As is demonstrated by the record before the court, the dancers are an integral part of the Club’s business.
The Club concedes it is an “alcohol establishment [and] entertainment facility,” which “provides] nude dancing entertainment... for its patrons.” The stage where the dancers perform is the focal point of the first floor, surrounded by tables and chairs with a balcony overlooking it. The dancers perform, in the direct view of the Club’s customers, whenever it is open for business in eight-song rotations. When the dancers are not *14 on stage, they walk around the floor and entertain the Club’s patrons either at their tables or in more private settings provided by the Club for this purpose. The court concludes the Club is in the business of providing adult entertainment, including nude dancing, and, even if much of its revenue is derived from alcohol sales, “the dancers work in the furtherance, or the course, of that business.” Chaves, SUCV2007-02505, slip op. at 7.
C. Independent Enterprise[9]
The final prong of the test considers whether the worker is “customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.” G.L.c. 149, §148B(3). Ultimately, the question is “whether the worker is wearing the hat of an employee of the employing company or is wearing the hat of his own independent enterprise.” Boston Bicycle Couriers, Inc. v. Deputy Dir. of the Div. of Employment & Training, 56 Mass.App.Ct. 473, 480 (2002). To qualify as an independent contractor, “the insignia must be that of a freestanding, independent entrepreneurial business in which the worker has a proprietaiy interest.” Id,
The Club contends the Plaintiffs were, essentially, running their own independent enterprises, able to work at locations of their own choosing and able to keep all of the income generated from their activities. Again, the court disagrees with this assessment. The record contains no evidence supporting the claim that the Plaintiffs were engaged in their own private business enterprises.
First, aside from keeping their regular customers informed of their performance schedules, there is no evidence that the Plaintiffs engaged in any type of private marketing; the Plaintiffs did not have personal websites, business cards, or professional photographs. [10] Further, while performing their services, the Plaintiffs were required to comply with numerous rules and policies established by the Club, i.e., while performing they wore the “hats” of employees. See id. The Plaintiffs were chosen by the Club’s Entertainment Coordinator, Koulouras. They worked in accordance with a schedule established by the Club. The Plaintiffs danced, on a stage designed by the Club, according to a rotation established by the Club, to music chosen by the Club’s disc jockey. In addition, the Plaintiffs were expected to follow the Club’s rules regarding attire and customer contact. The court is satisfied the Plaintiffs wore the insignia of employees.
Because the Club is unable to demonstrate either that the Plaintiffs’ services were outside “its usual course of business” or that the Plaintiffs were engaged in private business enterprises, the Plaintiffs are, as a matter of law, under G.L.c. 149, §148B, deemed employees. Therefore, the Motion for Partial Summary Judgment will be ALLOWED.
ORDER
For the reasons explained above, it is hereby ORDERED that Plaintiffs’ Motion for Partial Summary Judgment be ALLOWED.

Sandovai worked as an exotic dancer at the Club from July 2006 through March 2009. Van Wagner worked as an exotic dancer at the Club periodically from 1995 through October 2006, and continuously from then until October 8, 2009. Griffin worked as an exotic dancer at the Club from May 2002 until October 8, 2009. Bloodgood worked as an exotic dancer at the Club from May 2006 until October 2009.

In total, there are approximately twenty to thirty tables and about forty chairs surrounding the stage.

 The dancers do not have any license to, or degree in, dance.

A dancer’s appearance plays a large role in Koulouras’ selection process.

Other employees are prohibited from drinking while on the job.

After the Plaintiffs filed the current action, the Club removed the section entitled, “the Ten’s Girls.”

Although it is not strictly necessary since the Club failed to meet the requirements of prong two, the court briefly examines the third prong of the independent contractor test.

In fact, at least prior to this lawsuit, the Plaintiffs were listed on the Club’s website as “the Ten’s Girls.”